UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALFRED FELICIANO,

        Plaintiff,

v.

GLOBALWARE SOLUTIONS, INC.
TONY RUDSTON, and
GARY LORTIE,

        Defendants.

Civil Action No. 04-12461-GAO

## ANSWER AND COUNTERCLAIM

Defendants GlobalWare Solutions, Inc. ("GWS") and Gary Lortie ("Lortie") (together, "Defendants") hereby answer the Complaint of Plaintiff Alfred Feliciano, as follows:

### INTRODUCTION

The "Introductory Statement" is introductory in nature and does not require a response. To the extent a response is required, any allegations contained in the "Introductory Statement" are denied.

### PARTIES

1.    Upon information and belief, Defendants admit the allegations contained in Paragraph 1 of the Complaint.

2.    Admitted.

3.    Denied.

4.    Defendants admit that Lortie resides at 9 Walnut Hill Road, Millis, MA but deny that he is the Chief Financial Officer of GWS.

## JURISDICTION AND VENUE

5. The allegations in Paragraph 5 of the Complaint state conclusions of law to which no response is required. To the extent a response may be required, the allegations are denied.

## FACTUAL BACKGROUND

6. Denied.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint, and accordingly deny the allegations.

16. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint, and accordingly deny the allegations.

17. Denied.

18. Defendants admit only that Plaintiff also voluntarily enrolled for supplemental disability insurance from Colonial Insurance. Except as expressly admitted, Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint, and accordingly deny the allegations.

20. Defendants admit in that in 2002, at Plaintiff's instruction and during the time that Plaintiff was receiving a salary from GWS, GWS deducted approximately $13.83 from each weekly paycheck and forwarded such amount to Colonial Insurance. Except as expressly admitted, Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21. Denied.

22. Denied.

23. Defendants admit only that Feliciano was enrolled for long-term disability insurance coverage with Sun Life Assurance. The terms of that insurance are contained in the summary plan description and other plan documents that speak for themselves. Except as expressly admitted, Defendants deny the allegations contained in Paragraph 23 of the Complaint.

24. Denied.

25. Denied.

26. Denied. Further answering, Defendants state that Exhibit B speaks for itself and therefore no response is required.

27. Defendants admit that GWS stopped making payments to Plaintiff in or about February, 2003, and otherwise deny the allegations contained in the first sentence of Paragraph 27. Defendants admit the second and third sentences contained in Paragraph 27 of the Complaint.

28. Denied.

29. Defendants admit only that in or about Spring, 2003, Feliciano spoke with Rudston about his alleged expenses. Except as expressly admitted, Defendants deny the allegations contained in Paragraph 29 of the Complaint.

30. Admitted. Further answering, Defendants state that GWS issued to Plaintiff replacement checks in the total amount of $6,665.89, which checks were subsequently presented for payment, honored and paid in full.

31. Denied. Further answering, Defendants state that Feliciano ceased working for GWS prior to March of 2003.

32. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 32 of the Complaint, and accordingly deny the allegations. Defendants deny the allegations contained in the second sentence of Paragraph 32.

33. Denied.

34. Defendants admit that after May 30, 2003, Feliciano was no longer insured by Benefirst Health Insurance. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34 of the Complaint, and accordingly deny the allegations.

35. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint, and accordingly deny the allegations.

36. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint, and accordingly deny the allegations.

37.   Denied.

38.   Defendants admit that Plaintiff filed for unemployment compensation on or about August 3, 2003. Defendants deny the allegation in Paragraph 38 of the Complaint that GWS unilaterally and without notice "grossly underreported [Plaintiff's] wages." Further answering, to the extent Plaintiff's actual wages were underreported, such underreporting was a result of a fraudulent scheme concocted by the former President and Chief Executive Officer of GWS, James R. Bartlett, a scheme which Plaintiff knowingly and voluntarily engaged in to avoid appropriate taxation. Once discovered by GWS's new management team in early 2003, this stopped and any underreporting was corrected.

39.   Denied.

## COUNT I
(Breach of Contract – Feliciano v. Globalware)

40.   Defendants restate and incorporate by reference their responses to Paragraphs 1 through 39.

41.   Denied.

42.   Denied.

43.   Denied.

44.   Denied.

## COUNT II
(Breach of the Implied Covenant of Good Faith and Fair Dealing
Feliciano v. Globalware)

45.   Defendants restate and incorporate by reference their responses to Paragraphs 1 through 44.

46.   Denied.

47.   Denied.

48. Denied.

## COUNT III
(Violation of Payment of Wages Law – G.L. c. 149, 27C, 148 and 150
Feliciano v. All Defendants)

49. Defendants restate and incorporate by reference their responses to Paragraphs 1 through 48.

50. Denied.

51. Denied.

52. Denied.

53. Defendants are without knowledge or information sufficient to either admit or deny the allegations contained in Paragraph 53 of the Complaint.

54. Denied.

55. Denied.

## COUNT IV
(Fraud - Feliciano v. Globalware)

56. Defendants restate and incorporate by reference their responses to Paragraphs 1 through 55.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

## COUNT V
(Violation of 29 U.S.C. §1162 - Feliciano v. Globalware)

61.   Defendants restate and incorporate by reference their responses to Paragraphs 1 through 60.

62.   Denied.

63.   Denied.

## COUNT VI
(Violation of 29 U.S.C. §1166 - Feliciano v. Globalware)

64.   Defendants restate and incorporate by reference their responses to Paragraphs 1 through 63.

65.   Denied.

66.   Denied.

67.   Except as specifically admitted in this Answer, Defendants deny each and every allegation in Plaintiff's Complaint.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.   Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.   To the extent that Plaintiff has suffered damages as alleged, such damages were caused by someone or some entity for whose conduct Defendant was not and is not legally responsible.

3.   Plaintiff was an at-will employee and, therefore, could have been terminated at any time for any reason without notice.

4.   Plaintiff's claim for damages is barred, in whole or in part, by his failure to mitigate his damages.

5. Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and estoppel.

6. To the extent Plaintiff asserts claims against the individual defendants for alleged violations of M.G.L. c. 149, § 148, et seq., any alleged violations arose prior to their involvement in the Company and they cannot be held personally liable for such claims.

7. Plaintiff's claims must be dismissed for failure to serve process in compliance with the Federal Rules of Civil Procedure.

8. Plaintiff's claims are barred, in whole or in part, because they are preempted by the Employment Retirement Income Security Act of 1974, as amended.

9. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

10. Plaintiff's recovery in this action, if any, must be set off by sums owed to GWS as a result of GWS's counterclaim.

11. Plaintiff's claims are time-barred, in whole or in part, by applicable statutes of limitations.

12. Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

WHEREFORE, Defendants respectfully request that this Court: (1) dismiss the Complaint against them with prejudice; (2) award Defendants their costs and reasonable attorneys' fees incurred in defending this action; and (3) award them such other and further relief as the Court may deem just and appropriate.

## COUNTERCLAIMS

### NATURE OF THE CASE

These counterclaims arise out of a multi-faceted scheme by Alfred Feliciano ("Feliciano") and James R. Bartlett ("Bartlett"), the former President and Chief Executive Officer of GlobalWare Solutions, Inc. ("GWS"), in which both Feliciano and Bartlett breached their duties to GWS by, among other things, directing thousands of dollars in unearned payments to Feliciano during the period beginning in or about October, 2002 until February, 2003, and by conspiring to defraud GWS by concocting a false affirmation of an alleged employment agreement that intentionally and materially misrepresented Feliciano's relationship with GWS. This fraudulent affirmation -- *which was unknown to GWS's new management team until just before the commencement of this litigation* -- is the principal basis for Feliciano's contract and statutory claims for thousands of dollars in alleged unpaid wages, commissions, and other benefits. Bartlett's and Feliciano's egregious misconduct has already caused -- and will continue to cause -- GWS substantial harm in defending against these claims. For all of these reasons, this counterclaim asserts claims against Feliciano for breach of fiduciary duty, breach of the duty of loyalty, conversion, civil conspiracy, and abuse of process.

### PARTIES

1. Plaintiff-in-counterclaim GlobalWare Solutions, Inc. ("GWS") is a corporation organized under the laws of Delaware with a usual place of business at 200 Ward Hill Avenue, Massachusetts

2. Plaintiff-in-counterclaim Gary A. Lortie is an individual residing at 9 Walnut Hill Road, Millis, Massachusetts.

3.      Defendant-in-counterclaim Alfred Feliciano ("Feliciano") is a resident of Weston, Florida.

## ALLEGATIONS

4.      GWS currently provides a variety of services including software contract manufacturing, fulfillment, digital content management, supply chain management, and e-commerce solutions for technology-based companies.

5.      GWS's predecessor was ZBR Publications, Inc. ("ZBR"). ZBR was founded in 1978 as a full service print and documentation firm providing services to the defense industry and computer hardware manufacturers. Bartlett was one of ZBR's co-founders.

6.      Bartlett served as President and Chief Executive Officer of ZBR and GWS. At all times relevant, Feliciano was a close personal friend of Bartlett.

7.      Feliciano worked for GWS on an intermittent basis beginning in 1993 both as an independent consultant and occasionally as a regular employee until his employment relationship with GWS terminated in or about October of 2002 when Feliciano stopped working on behalf of GWS and when his salary payments terminated. As of the termination of his employment, Feliciano held the position of "Chief Strategy Officer." During all times when Feliciano worked as an employee for GWS, Feliciano was an at-will employee and did not have an employment contract for a specific period.

8.      Beginning in November, 2001, Mezzanine Management Fund III 'A', Mezzanine Management Fund III 'B', Mezzanine Management Fund III 'C', and Mezzanine Management Limited (collectively, "Mezzanine"), a private equity company, made investments in GWS and made subsequent investments in GWS in October of 2002 and February 2003. As a result of this

third investment in February 2003, Mezzanine acquired a majority interest in GWS of approximately 55%.

9. On or about February 12, 2003, Bartlett resigned as GWS's President and Chief Executive Officer.

10. On or about February 12, 2003, GWS appointed the following corporate officers: (i) Anthony Rudston ("Rudston") as its Chief Executive Officer; (ii) Gary A. Lortie ("Lortie") as its acting Chief Financial Officer; and (iii) Ian Cameron ("Cameron") as its acting President.

11. As of February 12, 2003, the new executive team of Rudston, Lortie and Cameron assumed the day-to-day management of GWS.

12. Once in place, GWS's new management team discovered that Bartlett had improperly used corporate resources for his own personal benefit and that of his family and friends -- slowly draining GWS of its assets.

13. Effective May 30, 2003, Bartlett was removed as a GWS director for cause because of his gross mismanagement of GWS during calendar year 2002 through February 12, 2003.

14. Despite having held an officer position with GWS and owing GWS a fiduciary duty of loyalty and even though Plaintiff ceased to provide any services whatsoever to GWS in or about October 2002, Feliciano continued to receive thousands of dollars in unearned payments from GWS based upon an inappropriate arrangement with Bartlett until GWS's new management discovered and terminated the scheme in February 2003.

15.  Upon information and belief, Feliciano and Bartlett conspired to defraud the Company and this Court by concocting a false affirmation of Feliciano's alleged employment agreement (**Exhibit B** to Plaintiff's Complaint) which intentionally misrepresented Feliciano's relationship with GWS.

16.  Feliciano continued in his fraudulent conduct by engaging the services of legal counsel. Feliciano demanded that GWS pay him hundreds of thousands of dollars based on an alleged contract that Feliciano well knows never existed.

17.  When GWS questioned Feliciano's counsel about the validity of Feliciano's allegations, Feliciano responded by asserting baseless and false claims in this Court, including claims based on the false and fraudulent "affirmation" of his "contract" with GWS, and causing process to issue to Defendants, all with the malicious and ulterior motive and purpose of receiving additional sums of monies from GWS to which he is not entitled. GWS's new management team had no knowledge of this false affirmation until just before the commencement of this action.

## COUNT I
### (Breach of Duty of Loyalty)

18.  GWS repeats and realleges the allegations in paragraphs 1 through 17 as if expressly set forth herein.

19.  During all times pertinent, Feliciano owed GWS a common law duty of loyalty.

20.  By reason of his foregoing acts, among others, Feliciano has breached the duty of loyalty that he owed to GWS.

21.  By reason of his foregoing acts, among others, Feliciano is liable to GWS for the economic damages proximately caused by his breach of his common law duty of loyalty.

## COUNT II
### (Breach of Fiduciary Duty)

22. GWS repeats and realleges the allegations in paragraphs 1 through 17 as if expressly set forth herein.

23. As Chief Strategy Officer and Executive Vice-President of GWS, Feliciano held a position of trust and confidence with GWS.

24. Feliciano owed fiduciary duties of good faith, fairness, care, loyalty and integrity to GWS and its stockholders and creditors.

25. By his actions, Feliciano has violated his fiduciary duties to GWS and its stockholders and creditors.

26. As a direct and proximate result of Feliciano's breach of his fiduciary duties to GWS and its stockholders and creditors, GWS has suffered substantial harm for which Feliciano is liable in an amount to be determined at trial.

## COUNT III
### (Conversion)

27. GWS repeats and realleges the allegations in paragraphs 1 through 17 as if expressly set forth herein.

28. As described at length above, Feliciano knowingly and willfully misappropriated GWS assets and diverted them to his use.

29. By reason of those acts, among others, Feliciano is liable to GWS for conversion.

## COUNT IV
### (Civil Conspiracy)
### (Brought By GWS and Lortie Against Feliciano)

30. GWS and Lortie repeat and reallege the allegations in paragraphs 1 through 17 as if expressly set forth herein.

31. As described at length above, Feliciano secretly and knowingly conspired with Bartlett to inappropriately divert thousands of dollars in unearned payments from GWS to Feliciano. Feliciano and Bartlett also conspired to defraud the Company and this Court by concocting a false affirmation of Feliciano's alleged employment agreement which intentionally misrepresented Feliciano's relationship with GWS. They did so in a manner to cause grievous harm to GWS and Lortie and to unlawfully benefit themselves.

32. By reason of their foregoing acts, among others, Feliciano engaged with Bartlett in civil conspiracy and Feliciano is liable to GWS and Lortie for all economic damage proximately caused by the conspiracy.

## COUNT V
### (Abuse of Process)
### (Brought By GWS and Lortie Against Feliciano)

33. GWS and Lortie repeat and reallege the allegations in paragraphs 1 through 17 as if expressly set forth herein.

34. Plaintiff has commenced this action and directed process to issue to GWS and Lortie despite knowing that the affirmation of his relationship with GWS is false and with the malicious and ulterior motive and purpose of exacting additional sums of monies from GWS and/or Lortie to which he is not entitled. Plaintiff's abusive use of legal action has caused substantial harm to GWS and Lortie.

35. By reason of their foregoing acts, among others, Feliciano has engaged in abuse of process and Feliciano is liable to GWS and Lortie for all economic damage proximately caused by the abuse of process.

WHEREFORE, GWS, and Lortie with respect to Counts IV and V, respectfully request that this Court award it its monetary damages, in an amount to be proven at trial, including costs and reasonable attorneys' fees incurred in defending this action; and award it such other and further relief as the Court may deem just and appropriate.

### JURY DEMAND

Defendants GWS and Gary Lortie request a trial by jury on all of its claims so triable.

        GLOBALWARE SOLUTIONS, INC.,
        and GARY LORTIE

        By their attorneys,

        */s/ Scott J. Connolly*
        Mark H. Burak, BBO # 558805
        Sandra E. Kahn, BBO # 564510
        Scott J. Connolly, BBO # 651007
        MORSE, BARNES-BROWN & PENDLETON, P.C.
        Reservoir Place
        1601 Trapelo Road
        Waltham, MA 02451
        (781) 622-5930
        (781) 622-5933 (facsimile)

Dated: February 11, 2005

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by first class mail on February 11, 2004.

        */s/ Scott J. Connolly*
        Scott J. Connolly